Samuel M. Lasser (SBN – 252754)
slasser@edelson.com
EDELSON PC
1934 Divisadero Street
San Francisco, California 94115
Tel: 415.994.9930
Fax: 415.776.8047

Rafey S. Balabanian*
rbalabanian@edelson.com
Benjamin H. Richman*
brichman@edelson.com
J. Dominick Larry*
nlarry@edelson.com
Amir C. Missaghi*
amissaghi@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro hac vice admission to be sought.

Attorneys for Plaintiff and the Putative Class

Additional attorneys appear on signature page

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| LUIS BRAVO, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **Violation of Magnusson Moss Warranty Act, 15 U.S.C. §§ 2301,** *et seq.***;**<br>2. **Violations of Cal. Civ. Code §§ 1750,** *et seq.***;**<br>3. **Violations of Cal. Bus. & Prof. Code §§ 17200,** *et seq.***;**<br>4. **Breach of Implied Warranty, Cal. Civ. Code §§ 1792 and 1792.1; and**<br>5. **Breach of Express Warranty, Cal. Com. Code § 2301.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Luis Bravo ("Plaintiff" or "Bravo") brings this class action complaint ("Complaint") against Defendant Samsung Electronics America, Inc., ("Defendant" or "Samsung") based on the defective design and/or manufacturing of one of its television remote controls. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.      In 2011 Samsung introduced a novel feature for its line of "smart" internet-connected televisions ("Smart TVs"): a two-sided remote control built with a full-sized keyboard ("Qwerty Remote"). One side of the remote incorporates traditional remote features to toggle the Smart TV's power, channel, volume, and other similar and simple functions.

2.      And on the remote's other side sits a full-sized "QWERTY" keyboard (*i.e.*, the layout found on a typical computer keyboard), a small display, and a unique directional pad (similar to a laptop computer's track pad). Such features transform Smart TVs into advanced electronic devices, not unlike computers, that let users browse and install dozens of applications, surf the web with ease, and even send communications across the internet.

3.      While traditional television remotes contain few components, Samsung's new remote is built around a modern wireless communication technology, known as Bluetooth, and other integrated circuits to control the advanced functionality. Yet, these added features require additional power. Instead of following industry norms by using a robust, rechargeable battery to power the device, Samsung defectively designed and manufactured the remote's power supply to use four common AAA batteries that are housed in a sealed, recessed compartment within the remote.

4.      Samsung's defective power supply leads to excessive heat and premature device failure. Worse, Samsung's defect can cause the remote's batteries to catastrophically fail and leak their harmful acidic contents. Samsung itself previously warned purchasers about its other remotes regarding the "leakage of [a battery's] internal liquid" "may cause

fire, personal injury or damage."[1] In so doing, Defendant acknowledged the dangers presented by leaking batteries in its products.

5.     Unfortunately, Samsung refuses to acknowledge, fix, or even warn of the safety defect in its Qwerty Remotes, leaving thousands of individuals with broken and dangerous remotes and thousands more who still use remotes that are prone to leaking a hazardous fluid. Accordingly, this putative class action lawsuit seeks (i) to prevent Defendant from continuing to sell the remotes, and (ii) damages for those who already purchased them.

## PARTIES

6.     Plaintiff Luis Bravo is a natural person and citizen of the State of California.

7.     Defendant Samsung Electronics America, Inc., is a corporation existing under the laws of the State of New York with its principal place of business located at 105 Challenger Road, Ridgefield Park, New Jersey 07660. Samsung does business throughout the United States and the State of California, including in this District, and is registered to do business in this State (entity number C0916172).

## JURISDICTION AND VENUE

8.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state than the Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

9.     This Court has personal jurisdiction over Defendant because Defendant conducts business in California and because the events giving rise to this lawsuit occurred, in substantial part, in California.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in, were directed to, and/or emanated from this District. 28 U.S.C. § 1391(b)(2). Venue is additionally proper because Plaintiff resides within this District, and Defendant is registered to, and regularly

---

[1]     *LFD Display User Manual, ED65C ED75C*, http://downloadcenter.samsung.com/ content/UM/201306/20130612200837441/BN46-EDC_ENG.pdf (last visited Feb. 26, 2015).

1    does, conduct business in this District, including by entering into consumer transactions.

2                                    **INTRADISTRICT ASSIGNMENT**

3         11.    Pursuant to Civil Local Rule 3-2(d), this case should be assigned to the San

4    Francisco Division.

5                                      **FACTUAL BACKGROUND**

6    **I.    A Brief Overview of Samsung and its Qwerty Remotes.**

7         12.    Samsung is one of the largest manufacturers of "Smart TVs," which offer

8    built-in internet connectivity, allow for web browsing, the installation of applications, and

9    other advanced features. Samsung's Smart TVs command a premium price of up to $200

10   over TVs without any "smart" capabilities.[2]

11        13.    In step with their added features, Samsung's Smart TVs became harder to

12   control with traditional television remotes. In response, Samsung developed an advanced

13   remote control for its line of Smart TVs. But in Samsung's haste to design a new remote, it

14   developed a product plagued with a potentially hazardous defect.

15        14.    Starting in at least 2011, Samsung began selling the BN59-01134B remote

16   ("Qwerty Remote") with some of its Smart TVs, such as the $3,799.99 Samsung

17   UN60D7000 60-inch Smart TV.[3] Samsung increased the price of its Smart TVs that included

18   the Qwerty Remote, meaning consumers paid a premium over other televisions to obtain the

19   Remote.[4]

20   _____

[2]    *Smart TVs: Not Such A Smart Idea | Techdirt*, https://www.techdirt.com/blog/
21   innovation/articles/20120221/03352017827/smart-tvs-not-such-smart-idea.shtml (last visited
     Feb. 26, 2015) (stating that "the 'smart' factor" of Smart TVs "runs between $70 and
22   $200.").
[3]    *Amazon.com: Samsung UN60D7000 60-Inch 1080p 240Hz 3D LED HDTV (Silver):*
23   *Electronics*, http://web.archive.org/web/20111029165746/http://www.amazon.com/
     Samsung-UN60D7000-60-Inch-1080p-Silver/dp/B004QFGGTY (last visited Feb. 26, 2015).
24   [4]    For example, Samsung's UN60D6400 60-inch Smart TV did not include the Qwerty
25   remote and had a price of $2,697.99 in January 2012—$300 less than the Samsung
     UN60D7000 that included the remote at a price of $2,997. *See UN60D6500 - Samsung 60"*
26   *Series 6 LED Black Flat Panel LCD HDTV at Abt*, http://web.archive.org/web/
     20120113111612/http://www.abt.com/product/55144/Samsung-UN60D6500.html (last
27   visited Feb. 26, 2015); *UN60D7000 - Samsung 60" 3D Series 7 LED Silver Flat Panel*
     *HDTV at Abt*, http://web.archive.org/web/20120116131349/http://www.abt.com/product
28   /53498/Samsung-UN60D7000.html (last visited Feb. 26, 2015). Some time later, Samsung

15.     According to Samsung, the Qwerty Remote would be "perfect for social media sites, web browsing and using Smart Hub [*i.e.*, the Smart TVs' main user interface]." Indeed, "the Samsung Qwerty Flip Remote, maximize[s] your Samsung Smart TV fun" and allows consumers to "get[] the most from the Samsung Smart TV experience." [5]

16.     The Qwerty Remote has a distinct two-sided design. On one side sits the buttons common to ordinary television remotes, such as a number pad to enter television channels, input-select buttons, and volume and channel toggle buttons. (*See* Figure 1.)



(**Figure 1.**)

17.     On the other side sits an additional number pad, a full "QWERTY" keyboard (*i.e.*, the standard keyboard layout for computers and smart phones), a small, single-line display, and a directional pad, that operates in a similar fashion to a laptop computer's touchpad, amongst other things. (*See* Figure 2.)

also sold individual Qwerty Remotes for a price of $121.67 or more, perhaps anticipating that consumers would have to regularly replace the defective remotes. *See Amazon.com: Samsung Remote Control - BN59-01134B: Electronics*, http://www.amazon.com/Samsung-BN59-01134B-Remote-Control/dp/B005DNSCWM/ ref=sr_1_1?ie=UTF8&qid=1406044392 &sr=8-1&keywords=BN59-01134B&dpPl=1 (last visited Feb. 26, 2015).

[5]     *SAMSUNG TV | Home of Samsung Smart TV | Hints and Tips*, http://web.archive.org/web/20120313010337/http://www.samsung.com/au/tv/my-hub/hints-and-tips/qwerty-remote.html (last visited Feb. 26, 2015) (describing the RMC-QTD1 remote that is, on information and belief, functionally equivalent to the BN59-01134B remote).

1

2

3

4

5

6

7

8



(**Figure 2.**)

9    18.    These additional buttons made interacting with Samsung's Smart TVs an

10  easier task. Although Samsung's Smart TVs allowed consumers to connect to the internet

11  and browse the web even without the Qwerty Remote, to do so they had to type addresses or

12  search terms using an on-screen virtual keyboard, which is widely known to be a time-

13  consuming and frustrating process.[6] The Qwerty Remote, however, made "for easy typing of

14  search terms, Twitter updates, etc.,"[7] and greatly improved the ease of which consumers could

15  search for and install Smart TV applications, such as Netflix, Facebook, or Pandora.[8] For this

16  reason, Samsung Smart TVs sold with Qwerty Remotes command a premium over

17  equivalent models sold without Qwerty Remotes, and Qwerty Remotes themselves are priced

18  higher than standard infrared remotes.

19    19.    Without functioning Qwerty Remotes, then, Samsung's Smart TVs lose a

20  substantial part of the functionality for which consumers paid a premium. Unfortunately, as

21  explained more fully below, Samsung designed and/or manufactured the Qwerty Remotes

22  with a defect that caused premature failure and a safety hazard.

23  ---

[6]    *What is a Smart TV? - Amazon.com*, http://www.amazon.com/gp/feature.html?ie=

24  UTF8&docId=1001072461 (last visited Feb. 26, 2015) ("If you intend to use your TV for
    serious web surfing, look for the ability to pair with a wireless keyboard made especially for

25  smart TVs, a fairly large remote control with a QWERTY keyboard, or a smartphone or
    tablet companion app you can use for typing.")

26  [7]    *Amazon.com: Samsung UN60D7000 60-Inch 1080p 240Hz 3D LED HDTV (Silver):
    Electronics*, http://web.archive.org/web/20111029165746/http://www.amazon.com/

27  Samsung-UN60D7000-60-Inch-1080p-Silver/dp/B004QFGGTY (last visited Feb. 26, 2015).
    [8]    *Id.*

28

## II.    **Samsung Designed and/or Manufactured Its Remotes With a Hazardous Defect.**

20.     The addition of the QWERTY keyboard and other keys required Samsung to build the Qwerty Remote with a new method of communicating between the remote and the TV. But while Samsung designed the remote around the new communications technology, it included an antiquated power supply. Samsung chose not to design the remote around a modern, robust battery, but instead defectively shoehorned four AAA-sized batteries into the middle of the remote. Samsung's defect has caused Qwerty Remotes to generate excessive heat, prematurely fail, and cause their batteries to leak a dangerous substance.

### A.    *The Qwerty Remotes Use Bluetooth to Connect to Samsung's Smart TVs.*

21.     For decades, TV remotes have relied on infrared technology to control televisions—point the remote at the TV, press a button, and the remote flashes invisible light to the TV's receiver. For single button presses, infrared works well. But Samsung's Qwerty Remote was designed to send entire words (*e.g.*, for searches or communications) to Smart TVs—a task too complicated for infrared.

22.     As such, Samsung chose to supplement infrared in its Remote with "Bluetooth" technology. Bluetooth is a modern, short-range communication technology that wirelessly connects two devices and allows for the transmission of an order of magnitude more information than infrared. One of the most ubiquitous uses of Bluetooth is in hands-free headsets for mobile phones.

23.     To use Bluetooth technology in the Qwerty Remote, Samsung had to design an entirely new remote, including many more integrated circuits and electronics compared to a traditional infrared remote.

24.     By adding integrated circuits in the Remote for Bluetooth and other features, Samsung increased the amount of power the remote would draw. Devices that use Bluetooth typically are powered by robust and rechargeable batteries, such as "lithium-ion" batteries. Conversely, infrared remotes are typically powered by one or two common AAA or AA batteries because of their minute power needs—power is drained only when buttons are pressed and the infrared light is illuminated.

25.     Despite modern internals, Samsung didn't build its Qwerty Remote with a rechargeable, robust battery, as would be standard for a Bluetooth device. Instead, Samsung powered the Qwerty Remote with four AAA batteries, essentially carrying over the design from infrared remotes, likely to save costs.

26.     But with normal use, the Qwerty Remote's batteries must be replaced in just a few weeks because the remote's Bluetooth and other advanced technology draws substantially more power. More importantly, Samsung's decision to power the remote with AAA batteries has other drawbacks that, as explained below, can lead to the batteries leaking a hazardous substance.

**B.     *The Qwerty Remote's Battery Compartment is Defective.***

27.     Samsung ignored convention by powering its Qwerty Remote with AAA batteries instead of a built-in, rechargeable battery. Making matters worse, the compartment that houses the AAA batteries is defective, causing excessive heat that leads to the remote prematurely failing and its batteries leaking.

28.     Television remotes (and generally all consumer devices) with replaceable batteries are invariably designed with battery compartments placed near the exterior of the device. This location, combined with a removable cover, facilitates the quick replacement of discharged batteries and aids in the dissipation of heat generated by the sustained use of batteries.

29.     Samsung designed its Qwerty Remote's battery compartment to be sandwiched in the center of the remote. With that design, the user removes a plastic cover, unlatches a battery tray, and slides the tray out to remove discharged batteries. The user then loads the tray with fresh batteries, slides the tray back into the remote, and installs the plastic cover to replace the batteries.

30.     But by placing the batteries—which are in continuous use due to the operation of the Bluetooth technology—in the center of the remote, Samsung created the necessary conditions for the Remote and its batteries to overheat. The Remote's batteries and two control boards generate heat that would otherwise dissipate if they were placed near the

exterior of the remote. Samsung's design and manufacturing process, though, resulted in blocked airflow, causing the Qwerty Remote to retain heat that may cause the Qwerty Remote's circuits to prematurely fail.

31.     Worse, the Qwerty Remote's battery compartment has a propensity to cause its Remote's batteries to fail and leak a hazardous liquid. Non-party Energizer Battery Manufacturing, Inc., maintains a "product safety datasheet" for alkaline batteries where it warns of the "hazards" of leaking batteries.[9] Energizer states that the "contents of an open battery can cause respiratory irritation," "skin irritation and/or chemical burns," and "severe irritation and chemical burns" to the eyes. Energizer cautions that when cleaning up "leaking batteries," "room ventilation may be required" and consumers should "wear safety glasses with side shields" and "use neoprene or natural rubber gloves."[10]

32.     Even Samsung previously warned consumers of the dangers leaking batteries for one of its other remote controls, stating that "the battery may become damaged or it may cause fire, personal injury or damage due to leakage of the internal liquid."[11] Unfortunately, Samsung doesn't warn of the dangers of their defective Qwerty Remotes, nor does Samsung disclose to consumers the remote's defect, described above (the "Battery Defect"). As a result, consumers are unaware that Samsung's remotes "may cause fire, personal injury or damage due to leakage of the internal liquid" of the batteries.

**III.   Consumers are Concerned About Samsung's Hazardous and Defective Remotes.**

33.     Owners of Qwerty Remotes that have manifested the Battery Defect have turned to the internet to voice their displeasure. Reports of "sizzling," "popping," and "leaking" batteries are legion.[12] And because "there is no viable alternative to this remote to

---

[9]     Energizer, *Product Safety Data Sheet*, available at http://data.energizer.com/PDFs/alkalinecylindrical_psds.pdf (last visited Feb. 26, 2015).
[10]    *Id.*
[11]    *LFD Display User Manual, ED65C ED75C*, http://downloadcenter.samsung.com/ content/UM/201306/20130612200837441/BN46-EDC_ENG.pdf (last visited Feb. 26, 2015).
[12]    *Amazon.com: Big Family "Gamer. Digital Native and Business Leader."'s review of Samsung Remote Control - BN59-01134B*, http://www.amazon.com/review/ R1P3J932MVNYE4/ref=cm_cr_rdp_perm (last visited Feb. 26, 2015) (commenter noting, "I really can't believe [there's] no recall. How dangerous if we had kids. Battery acid got all over the place. So frustrating, AND this was the second time it happened! $160 to replace

1    be able to use all the functions of [their] Samsung TV[s] easily,"[13] consumers are stuck with

2    broken remotes and TVs with impaired functionality.

3        34.    For example, one reviewer states that a Qwerty Remote that came with her

4    Samsung 55-inch TV stopped working so she "went to change the batteries (usual) & upon

5    ejecting the batteries, there was battery acid all over everything (not so usual!). After

6    cleaning everything up & putting all new batteries in, the remote worked for a few days, then

7    it stopped & everything was covered in battery acid again."[14]

8        35.    Another consumer wrote that the Qwerty Remote "used up batteries in a day

9    or two and I was only using the remote part [*i.e.*, the infrared side of the remote]. After about

10   three weeks I woke up one morning and tried to turn on the TV. The batteries were dead. I

11   it!"). Undoubtedly, Samsung is aware of these complaints—recently, one of Samsung's
     related corporate entities was fined by a regulatory body for manipulating online comments
12   at sites similar to Amazon.com, suggesting that Samsung regularly monitors such forums.
     *See BBC News - Samsung probed in Taiwan over 'fake web reviews'*,
13   http://www.bbc.com/news/technology-22166606 (last visited Feb. 26, 2015).

14       Moreover, throughout 2011—the same year Plaintiff Bravo purchased his television
     containing the Qwerty Remote—Samsung employed "online brand ambassadors" to find
15   "anything specific that people didn't like about" the Qwerty Remote and to "pass[] up that
     feedback" to others at Samsung. *The new 8000 series plasma for 2011 - CNET Samsung
16   Forums*, forums.cnet.com/7723-13973_102-525170/the-new-8000-series-plasma-for-
     2011/?tag=rb_content;contentMain (last visited Feb. 26, 2015); *see also Block, Justin
17   Resume*, http://www.slideshare.net/JustinBlock/block-justin-resume-43191565 (last visited
     Feb. 26, 2015) (stating that brand ambassadors, employed from at least 2009 to 2013,
18   "represented Samsung … through online forums, retailers, social media, and client-specific
     websites," where they would "responded to customer inquiries" and "generate[] executive
19   level analytic reports" of their findings). As such, these brand ambassadors likely saw
     complaints in popular online forums made in 2011 (prior to when Plaintiff purchased his
20   television) including complaints of "exploding" batteries. *See e.g., Official Samsung
     UNXXD7000 Owners' Thread - AVS | Home Theater Discussions And Reviews*,
21   http://www.avsforum.com/forum/166-lcd-flat-panel-displays/1322234-official-samsung-
     unxxd7000-owners-thread.html (last visited Feb. 26, 2015) (complaint from Mar. 16, 2011);
22   *Samsung's QWERTY flip Smart TV remote is official along with new TV apps and Megamind
     Blu-ray 3D pack-in (updated: hands-on!)*, http://www.engadget.com/2011/03/16/samsungs-
23   qwerty-flip-smart-tv-remote-is-official-along-with-new/#comment-166881816 (last visited
     Feb. 19, 2015) (complaint made Mar. 16, 2011).
24
25

26   [13]    *Amazon.com: optimizeyourvideo's review of Samsung Remote Control - BN59-
     01134B*, http://www.amazon.com/review/R3MAR8VW1F3RKI/ref=cm_cr_pr_perm?
27   ie=UTF8&ASIN=B005DNSCWM (last visited Feb. 26, 2015).
     [14]    *Amazon.com: Laura Taeger's review of Samsung Remote Control - BN59-01134B*,
28   http://www.amazon.com/review/RB10FZNBUGJJ1/ref=cm_cr_pr_perm?ie=UTF8&ASIN=
     B005DNSCWM (last visited Feb. 26, 2015).

1  was going to put in new batteries when I discovered that the batteries were very hot. *They*

2  *were hot enough to melt the battery holder.*"[15]

3        36.     Indeed, another consumer confirmed, "The remote control is a hazard! I went

4  to use it and [] found that the batteries were fried, so I purchased a new battery tray and it

5  *fried the batteries again and burnt the new tray*!! I have never had a remote that fry's

6  batteries. This is extremely dangerous! Could injure your hands or start a fire! Samsung

7  won't stand behind their products! Consider yourself warned! (Amazon makes me give a star

8  rating, but they don't even deserve one star!)"[16]

9        37.     And in a review titled "EXPLODED," a consumer reports, "All reviews are

10  very accurate. My remote just imploded. We heard a loud "POP". I opened the battery

11  compartment and there was battery juice everywhere and the batteries were extremely hot!

12  … This could have caused a fire in my home!"[17]

13  **IV.   Plaintiff Bravo's Experience with his Defective Remote.**

14        38.     On December 16, 2011 Plaintiff Bravo purchased a Samsung UN60D7000 60-

15  inch Smart TV from Amazon.com at a cost of $2,299.

16        39.     The model of Samsung Smart TV Plaintiff purchased contained a Qwerty

17  Remote, for which he paid a premium of approximately $300. The inclusion of the Qwerty

18  Remote was a material reason Plaintiff purchased the UN60D7000 television instead of other

19  alternatives. Specifically, Plaintiff Bravo was drawn to the television's Qwerty Remote

20  ─────────────────
   [15]     *Amazon.com: RONALD G GOODMAN's review of Samsung Remote Control - BN59-*
21  *01134B*, http://www.amazon.com/review/R14OF48TSTIOLR/ref=cm_cr_rdp_ perm (last
   visited Feb. 26, 2015) (emphasis added).
22  [16]     *Amazon.com: Robert Chien's review of Samsung Remote Control - BN59-01134B*,
   http://www.amazon.com/review/RRR2E3CL4FWEO/ref=cm_cr_rdp_perm (last visited Feb.
23  26, 2015) (emphasis added); *see also Amazon.com: Michelle's review of Samsung Remote*
   *Control - BN59-01134B*, http://www.amazon.com/review/R2Y7DT666LSGUW/ref=cm
24  _cr_rdp_perm?ie=UTF8&ASIN=B005DNSCWM (last visited Feb. 26, 2015) ("we noticed
   inside the battery housing case, either the battery or the remote got so hot that it actually
25  melted the plastic and covered the metal conductors; needless to say it has not worked
   again.").
26  [17]     *Amazon.com: USREALTOR's review of Samsung Remote Control - BN59-01134B*,
27  http://www.amazon.com/review/R2U23I9Y2LTYKM/ref=cm_cr_pr_perm?ie=UTF8&ASIN
   =B005DNSCWM (last visited Feb. 26, 2015).
28

1  because its keyboard would allow him to easily browse the internet on his TV.

2      40.    After Plaintiff's television arrived, he began to use the TV and the Qwerty

3  Remote to, for example, browse the internet on his television using its QWERTY keyboard.

4  However, the Qwerty Remote's batteries quickly depleted after only a few days of use.

5  Thereafter, Plaintiff has to regularly replace the remote's batteries with new ones after low to

6  moderate use of the remote and even after some time when he did not use the remote at all.

7      41.    Approximately five months later, Plaintiff installed another set of fresh

8  batteries in the remote, but soon after, the batteries in the remote began to leak their

9  hazardous contents and the remote stopped working.

10      42.    Soon after the remote caused the batteries to leak, and within one year of

11  when he purchased his TV, Plaintiff Bravo called Samsung regarding his defective remote

12  and of the leaking batteries. During the call, Samsung's representative told Plaintiff Bravo

13  that the remote was "out of warranty," refused to repair or replace the remote, and stated that

14  Plaintiff would have to purchase a replacement remote for between "$200 and $300."

15  Samsung's representative did not address the leaking batteries.

16      43.    Thereafter, Plaintiff purchased a replacement infrared remote for $17.59 to

17  control his Smart TV's basic functionality, such as turning it on and off, changing the

18  channel, and adjusting the volume. The replacement infrared remote did not have a keyboard

19  of any kind.

20      44.    As it stands, Plaintiff has suffered damages as the result of Defendant's

21  defective Qwerty Remote in the form of money paid to purchase a replacement remote and in

22  the premium he paid for his Samsung UN60D7000 60-inch Smart TV to obtain the remote.

23  **CLASS ALLEGATIONS**

24      45.    **Class Definition:** Plaintiff Bravo brings this action pursuant to Federal Rule

25  of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a Class and Subclass

26  of similarly situated individuals defined as follows:

27      Class: All individuals and entities in the United States who purchased a BN59-
01134B remote control or who purchased a Samsung television packaged with a

28      BN59-01134B remote control.

Subclass: All members of the Nationwide Class domiciled in the State of California.

The following people are excluded from the Class and Subclass: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class and Subclass; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

46.     **Numerosity**: The exact number of members of the Class and Subclass is unknown and is not available to Plaintiff at this time, but individual joinder in this case is impracticable. The Class and Subclass likely consist of thousands of individuals and other entities. Class and Subclass members can be easily identified through Defendant's records.

47.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class and Subclass, and those questions predominate over any questions that may affect individual members of the Class and Subclass. Common questions for the Class and Subclass include but are not limited to the following:

        a)     Whether the Qwerty Remotes suffer from the Battery Defect;

        b)     Whether the Battery Defect constitutes an unreasonable safety risk;

        c)     Whether (and for how long) Defendant knew about the Battery Defect;

        d)     Whether Defendant had and continues to have a duty to disclose the existence of the Battery Defect;

        e)     Whether Defendant's conduct constitutes a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*;

        f)     Whether Defendant's conduct violated Cal. Civ. Code §§ 1750, *et seq.*;

        g)     Whether Defendant's conduct violated Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

20

h) Whether Defendant's conduct constitutes a breach of implied warranty of merchantability pursuant to the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792 and 1791.1, *et seq.*; and

i) Whether Defendant's conduct constitutes a breach of express warranty, Cal. Com. Code § 2313.

48. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class and Subclass. Plaintiff and members of the Class and Subclass sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class and Subclass.

49. **Adequate Representation**: Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class and Subclass, and he has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class and Subclass, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclass, and they have the resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class and Subclass.

50. **Policies Generally Applicable to the Class and Subclass**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Subclass and making final injunctive relief appropriate with respect to the Class and Subclass each as a whole. Defendant's policies challenged herein apply and affect the members of the Class and Subclass uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the whole of each the Class and Subclass, not on facts or law applicable only to Plaintiff.

51. **Superiority**: This class action is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient

adjudication of this controversy and joinder of all members of the Class and Subclass is impracticable. The damages suffered by the individual members of the Class and Subclass will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class and Subclass to obtain effective relief from Defendant's misconduct. Even if members of the Class and Subclass could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

52.     Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**Violation of the Magnuson-Moss Warranty Act**
**15 U.S.C. §§ 2301, *et seq.***
**(On Behalf of Plaintiff and the Class)**

53.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

54.     The Qwerty Remotes are consumer products as defined in 15 U.S.C. § 2301(1) because they are tangible personal property distributed in commerce and are normally used for personal or household purposes.

55.     Plaintiff and members of the Class are consumers as defined in 15 U.S.C. § 2301(3).

56.     Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5) because it is in the business of making consumer products (*e.g.*, its Qwerty Remotes and Smart TVs) directly or indirectly available to consumers, and because it has issued written

1  warranties to consumers.[18]

2      57.     Defendant issued written warranties as defined in 15 U.S.C. § 2301(6) in

3  connection with the sale of the Defective Remotes. Defendant's written warranties warranted

4  the remotes against defects in manufacturing defects in materials and workmanship for a

5  period of one year.

6      58.     Defendant breached the written warranties by manufacturing the Qwerty

7  Remotes with a defect that causes premature failure, excessive heat, and batteries to leak a

8  hazardous substance.

9      59.     Plaintiff notified Samsung of the breach within a reasonable time by calling

10  Samsung's within the Qwerty Remote's warranty period. Samsung was also on notice of the

11  Battery Defect from the complaints and/or repair or replacement requests from members of

12  the Class that it received or reviewed, and from its testing, diagnostic, maintenance, repair,

13  and/or replacement records.

14      60.     Nevertheless, Plaintiff and the Class were not required to notify Samsung of

15  the breach because affording Samsung a reasonable opportunity to cure its breach of written

16  warranty would have been futile. Indeed, even after Plaintiff notified Samsung of the breach,

17  it refused to acknowledge the safety defect and would not repair or replace the remote.

18      61.     Plaintiff and the Class have suffered harm as a proximate result of

19  Defendant's breach, violations of law, and wrongful conduct in the form actual monetary

20  damages because Plaintiff and the Class purchased Defendant's Qwerty Remotes with the

21  Battery Defect that causes the remote and its batteries to fail. As a result of the failures,

22  Plaintiff and the Class had to pay money to replace and/or repair the Defective Remotes, and

23  in all cases paid for televisions and remotes they would have either never purchased or paid

24  less money for.

25      62.     As a result of Defendant's violations of Magnuson-Moss, Plaintiff seeks to

26  recover actual damages, injunctive and declaratory relief, costs and attorneys' fees, and all

27  _____
[18]     A true and accurate reproduction of Defendant's warranty for the UN60D7000

28  television and Qwerty Remote is attached hereto as Exhibit A.

other available remedies

### SECOND CAUSE OF ACTION
**Violation of California's Consumer Legal Remedies Act**
**Cal. Civ. Code §§ 1750,** *et seq.*
**(On Behalf of Plaintiff and the Subclass)**

63.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

64.     The Consumers Legal Remedies Act ("CLRA") applies to Defendant's actions and conduct as described herein because it extends to transactions that are intended to result, or which have resulted, in the sale of goods or services to consumers.

65.     Defendant is a "person" as defined by Cal. Civ. Code § 1761(c).

66.     Plaintiff and each member of the Subclass are "consumers" as defined by Cal. Civ. Code § 1761(a).

67.     Defendant's Qwerty Remotes are "goods" within the meaning of Cal. Civ. Code § 1761(a).

68.     As described herein, Defendant failed to disclosed the Qwerty Remote's Battery Defect to Plaintiff and the members of the Subclass in violation of Cal. Civ. Code §§ 1750, *et seq.*

69.     Defendant, acting with knowledge, intentionally and unlawfully brought harm upon Plaintiff and the Subclass by omitting from its advertisements, marketing, and documentation any statement that it designed and/or manufactured the Qwerty Remotes with the Battery Defect that created a safety risk by creating excessive heat which then caused batteries to leak hazardous substances.

70.     Defendant knew that its Qwerty Remotes suffered from an inherent defect, were defectively designed and manufactured, would fail prematurely, and were not suitable for their intended use.

71.     Further, Plaintiff's Qwerty Remote began exhibiting symptoms resulting from the Battery Defect within Samsung's one-year warranty.

72.     Defendant was in a superior position to know the true state of facts about and the existence of the safety defect found in the Qwerty Remotes (*i.e.*, the Battery Defect),

because it was aware of its design and manufacturing processes, as well as the electrical and thermal loads that would be placed on the Qwerty Remotes through regular use.

73.     Plaintiff and the Subclass Members, on the other hand, could not have reasonably been expected to learn or discover that their Qwerty Remotes contain a dangerous safety defect (*i.e.*, the Battery Defect) until the remote began exhibiting symptoms.

74.     Defendant, as a leading consumer electronics manufacturer, knew that Plaintiff and the members of the Subclass, as reasonable consumers, could not reasonably have been expected to learn about or discover the safety defect (*i.e.*, the Battery Defect).

75.     Further, Defendant, admittedly aware of the safety risks caused by alkaline battery failure, knew that its design and/or manufacturing defects placed Plaintiff and the Subclass members at a substantial risk of serious physical harm.

76.     As such, Defendant owed Plaintiff and the Subclass members a duty to disclose the defect found in the Qwerty Remotes.

77.     By failing to disclose the Battery Defect, Defendant has been knowingly and intentionally concealing material facts and breached its duty not to do so.

78.     The facts concealed or not disclosed by Defendant to Plaintiff and the members of the Subclass are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Qwerty Remotes or Samsung TVs that shipped with the Qwerty Remotes. Had Plaintiff and the other members of the Subclass known that the Qwerty Remotes were defective, posed a safety risk, and were functionally deficient, they would not have purchased the Qwerty Remotes or the Samsung TVs that shipped with the Qwerty Remotes or would have paid less for them.

79.     Plaintiff and the members of the Subclass reasonably expected that their Qwerty Remotes would be free from defects and they would not prematurely fail, produce excessive heat to the point of failure, and cause batteries to leak hazardous substances.

80.     Thus, as a direct and proximate result of Defendant's failure to disclose its design and manufacturing defect, Plaintiff and the Subclass members were harmed to the extent they paid a premium for Qwerty Remotes, when, had they known of the defect, they

1  would not have.

2  81.    Furthermore, and again as a direct and proximate result of Defendant's failure

3  to disclose the existence of the Battery Defect, Plaintiff and the Subclass members were

4  harmed to the extent they had to purchase replacement remotes due to the Qwerty Remotes'

5  Battery Defect and premature failure.

6  82.    Under Cal. Civ. Code § 1780(a) and (b), Plaintiff, individually and on behalf

7  of the Class, seeks an injunction requiring Defendant to cease and desist the illegal conduct

8  alleged in this Complaint, and all other appropriate remedies for its violations of the CLRA.

9  For the sake of clarity, Plaintiff explicitly disclaims any claim for damages under the CLRA

10  at this time.

### THIRD CAUSE OF ACTION
**Violations of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiff and the Subclass)**

13  83.    Plaintiff incorporates by reference the foregoing allegations as if fully set

14  forth herein.

15  84.    California's Unfair Competition Law ("UCL"), Cal Bus. & Prof. Code

16  §§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in

17  commercial markets for goods and services.

18  85.    The UCL prohibits any unlawful, unfair, or fraudulent business act or practice,

19  including the employment of any deception, fraud, false pretense, false promise,

20  misrepresentation, or the concealment, suppression, or omission of any material fact. A

21  business practice need only meet one of the three criteria to be considered unfair competition.

22  86.    The existence of a safety defect in a product is a material term of any

23  transaction because it directly affects a consumer's choice of, or conduct regarding, whether

24  to purchase a product.

25  87.    As described herein, Defendant has engaged in deceptive business practices,

26  as defined by the UCL, by failing disclose that the Qwerty Remote contains a material defect

27  that causes a safety hazard (by creating excessive heat which then causes batteries to leak

28  hazardous substances) and premature failure despite knowing that the Qwerty Remotes

1   contained the Battery Defect.

2        88.     Plaintiff's Qwerty Remote began exhibiting symptoms resulting from the

3   Battery Defect within Samsung's one-year warranty.

4        89.     Defendant was in a superior position to know the true state of facts about and

5   the existence of the safety defect found in the Qwerty Remotes (*i.e.*, the Battery Defect),

6   because it was aware of its design and manufacturing processes, as well as the electrical and

7   thermal loads that would be placed on the Qwerty Remotes through regular use.

8        90.     Plaintiff and the Subclass members, on the other hand, could not have

9   reasonably been expected to learn or discover that their Qwerty Remotes contain a dangerous

10   safety defect (*i.e.*, the Battery Defect) until the remote began exhibiting symptoms.

11        91.     Defendant, as a leading consumer electronics manufacturer, knew that

12   Plaintiff and the members of the Subclass, as reasonable consumers, could not reasonably

13   have been expected to learn about or discover the safety defect (*i.e.*, the Battery Defect).

14        92.     Further, Defendant, admittedly aware of the safety risks caused by alkaline

15   battery failure, knew that its design and manufacturing defects placed Plaintiff and the

16   Subclass members at a substantial risk of serious physical harm.

17        93.     As such, Defendant owed Plaintiff and the Subclass members a duty to

18   disclose the defect found in the Qwerty Remotes.

19        94.     Defendant violated the UCL's unfair prong by causing substantial injury to

20   consumers by failing to disclose the existence of the Battery Defect contained in the Qwerty

21   Remotes. The injuries caused by Defendant's unfair conduct are not outweighed by any

22   countervailing benefits to consumers or competition, and the injury is one that consumers

23   themselves could not reasonably have avoided.

24        95.     Given the information asymmetry between Defendant and consumers

25   regarding the Qwerty Remote's design, manufacturing process, and operation, Defendant

26   knew or had reason to know that Plaintiff and the Subclass could not have reasonably known

27   or discovered the existence of the Battery Defect.

28        96.     Defendant has also violated the UCL's unlawful prong by violating the

1  CLRA, as described above.

2      97.    Plaintiff and members of the Subclass reasonably expected that their Qwerty

3  Remotes would be free from defects and they would not prematurely fail, produce excessive

4  heat to the point of failure, and cause batteries to leak hazardous substances.

5      98.    Defendant's unlawful and unfair conduct occurred during the marketing and

6  sale of its television and TV accessory products, and therefore occurred in the course of

7  Defendant's business practices.

8      99.    Defendant's unfair and unlawful conduct directly and proximately caused

9  Plaintiff and the Subclass a loss of money or property in the form of the premium price paid

10  for their Samsung TVs to obtain the remote or, at least, the difference between what they

11  paid for the Samsung TVs and their actual value without functioning Qwerty Remotes.

12      100.    But for Defendant's conduct as described herein, Plaintiff and the Subclass

13  would not have purchased the Samsung TVs with the Qwerty Remote, or would have paid

14  substantially less for them.

15      101.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order (1)

16  requiring Defendant to cease the unfair and unlawful practices described herein; (2) requiring

17  Defendant to restore to Plaintiff and each Subclass member any money acquired by means of

18  unfair and/or unlawful competition (restitution); and, (3) awarding reasonable costs and

19  attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

20  **FOURTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**

21  **Song-Beverly Consumer Warranty Act**
**Cal. Civ. Code §§ 1792, 1792.1,**

22  **(On Behalf of Plaintiff and the Subclass)**

23      102.    Plaintiff incorporates by reference the foregoing allegations.

24      103.    As the designer, manufacturer, marketer, and/or distributor of the Qwerty

25  Remotes, Defendant impliedly warranted that the Qwerty Remotes were fit for their intended

26  and ordinary purpose.

27      104.    The intended and ordinary purpose of the Qwerty Remote was to operate as a

28  television remote control with a QWERTY keyboard (*e.g.*, allowing purchasers to control

their Samsung TVs with technology beyond a common TV remote).

105. Defendant breached the warranty implied in the contract for the sale of the Qwerty Remotes. The Qwerty Remotes were unfit for their intended and ordinary purpose because they were designed and manufactured with a safety hazard (by creating excessive heat which then causes batteries to leak hazardous substances) and to prematurely fail.

106. As a result, Plaintiff and the Subclass members did not receive the goods as impliedly warranted by Defendant. Indeed, Plaintiff's Qwerty Remote stopped working completely after it began exhibiting symptoms of the Battery Defect and Plaintiff was not able to use his Qwerty Remote for its ordinary purpose of controlling his Smart TV with the QWERTY keyboard.

107. Plaintiff and the Subclass members purchased the Qwerty Remotes (and/or the Samsung Smart TVs that included the Qwerty Remotes) for use as TV remotes with QWERTY keyboards relying on Defendant's skill and judgment and the implied warranty of fitness for that purpose.

108. The Qwerty Remotes were not altered by Plaintiff and the Subclass members and were defective when they left the exclusive control of Defendant.

109. Defendant knew that the Qwerty Remotes would be purchased (and/or included with the Samsung Smart TVs) and used by consumers, such as Plaintiff and the Subclass, that do not have the requisite technical expertise to independently inspect the remotes for defects that would cause premature failure, excessive heat, and batteries to leak hazardous substance.

110. Defendant defectively designed and/or manufactured the Qwerty Remotes, causing them to be unfit for their intended purpose (*e.g.*, allowing purchasers to control their Samsung TVs with a QWERTY keyboard) and Plaintiff and the Subclass members did not receive the goods as warranted.

111. Moreover, Defendant designed and/or manufactured the Qwerty Remotes in a way that posed a safety hazard. Specifically, the Qwerty Remotes were designed and/or manufactured to fail prematurely, produce excessive heat that can melt or deform the

remote's plastic housings, and cause installed batteries to leak hazardous substances.

112.    As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and the Subclass paid a premium for functional Qwerty Remotes, and instead received defective and dysfunctional remotes. This defect has in turn led to widespread Remote failure, leaks of hazardous substances, and the need to purchase replacement remotes.

**FIFTH CAUSE OF ACTION**
**Breach of Express Warranty**
**Cal. Com. Code § 2313**
**(On Behalf of Plaintiff and the Subclass)**

113.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

114.    Samsung included an express warranty with every Samsung Smart TV that included a Qwerty Remote, warranting the Smart TV and Qwerty Remote against manufacturing defects in workmanship and materials for a period of one year.

115.    Samsung breached the express warranty by selling Qwerty Remotes with the Battery Defect (a safety hazard stemming from the remotes creating excessive heat which then causes batteries to leak hazardous substances) that required repair or replacement within the warranty period and by refusing to honor the express warranty by repairing or replacing, free of charge, the defective Qwerty Remotes.

116.    Plaintiff notified Samsung of the breach within a reasonable time by calling Samsung's within the Qwerty Remote's warranty period. Samsung was also on notice of the Battery Defect from the complaints and/or repair or replacement requests from members of the Subclass that it received or reviewed, and from its testing, diagnostic, maintenance, repair, and/or replacement records.

117.    Nevertheless, Plaintiff and the Subclass were not required to notify Samsung of the breach because affording Samsung a reasonable opportunity to cure its breach of written warranty would have been futile. Indeed, even after Plaintiff notified Samsung of the breach, it refused to acknowledge the safety defect and would not repair or replace the remote.

118.   As a direct and proximate cause of Samsung's breach, Plaintiff and the other members of the Subclass have suffered damages and continue to suffer damages, in the form of the premium price paid for the Samsung TVs with Qwerty Remotes, or the difference between what they paid for the Samsung TVs with Qwerty Remotes and their actual value without functioning remotes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Luis Bravo on behalf of himself and the Class and Subclass respectfully requests that the Court enter an order:

A.   Certifying this case as a class action on behalf of the Class and Subclass defined above, appointing Luis Bravo as representative of the Class and Subclass, and appointing his counsel as class counsel;

B.   Declaring that Defendant's actions, as set out above, violate the CLRA (Cal. Civ. Code §§ 1750, *et seq.*) and the UCL (Cal. Bus. & Prof. Code §§ 17200 *et seq.*); and constitute a breach of implied warranty pursuant to the Song-Beverly Consumer Warranty Act (Cal. Civ. Code §§ 1792 and 1791.1), a breach of express warranty (Cal. Com. Code § 2313), and a violation of the Magnuson-Moss Warranty Act;

C.   Awarding damages, including statutory and punitive damages where applicable, to Plaintiff and the Class in an amount to be determined at trial;

D.   Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

E.   Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

F.   Awarding such other injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Class; and

G.   Awarding such other and further relief as the Court deems reasonable and just.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

Dated: February 26, 2015

**LUIS BRAVO**, individually and on behalf of all others similarly situated,

By: /s/ Samuel M. Lasser

One of Plaintiff's Attorneys

Samuel M. Lasser (SBN – 252754)
slasser@edelson.com
EDELSON PC
1934 Divisadero Street
San Francisco, California 94115
Tel: 415.994.9930
Fax: 415.776.8047

Rafey S. Balabanian*
rbalabanian@edelson.com
Benjamin H. Richman*
brichman@edelson.com
J. Dominick Larry*
nlarry@edelson.com
Amir C. Missaghi*
amissaghi@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Stefan L. Coleman*
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
201 South Biscayne Blvd, 28th Floor
Miami, Florida
Tel: 877.333.9427
Fax: 888.498.8946

*Pro hac vice* admission to be sought.

*Attorneys for Plaintiff and the Putative Class*